**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-03353- DDD-NRN

TEYMUR MEHDIYEV, an individual,

Plaintiff/Counterdefendant,

v.

QATAR NATIONAL TOURISM COUNCIL
a/k/a QATAR TOURISM AUTHORITY,
a Government Authority of Qatar,

Defendant/Counterclaimant.

---

**DEFENDANT AND COUNTERCLAIMANT QATAR NATIONAL TOURISM COUNCIL'S MOTION FOR ENTRY OF FINAL JUDGMENT UNDER FED. R. CIV. P. 54(b)**

---

On April 1, 2021, this Court granted partial summary judgment that Plaintiff Teymur Mehdyev has not engaged in cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). Dkt. 53. The summary judgment order fully resolved Plaintiff's First Cause of Action for a Declaratory Judgment of no cybersquatting. *See* Dkt. 1 ¶¶ 27–36. The summary judgment order also fully resolved Defendant's Second Counterclaim alleging cybersquatting under 15 U.S.C. § 1125(d), which was a mirror image of Plaintiff's claim for a declaratory judgment. Dkt. 14, Counterclaims[1] ¶¶ 51–54. The remaining claims and counterclaims in this case are entirely separate from the claims decided on summary judgment,

[1] All citations to specific paragraphs of Dkt. 14, NTC's Answer and Counterclaim, are to the paragraphs within the Counterclaims beginning on Page 8 of the document.

and no just reason exists to delay appellate review of those claims. Accordingly, Defendant now seeks entry of final judgment under Rule 54(b) of the Federal Rules of Civil Procedure on Plaintiff's First Cause of action and Defendant's Second Counterclaim.

Defendant's Motion is supported by the Declarations of Matt Armstrong ("Armstrong Decl.") and Berthold Trenkel ("Trenkel Decl.") filed concurrently herewith. Counsel for Defendant and Counterclaimant Qatar National Tourism Council ("NTC") and counsel for Plaintiff have met and conferred regarding the subject matter of this Motion pursuant to D.C.COLO.L.CivR 7.1(a). Plaintiff will oppose this Motion.

## I. BACKGROUND

NTC is the government tourism agency of the country of Qatar and is tasked with increasing tourism within Qatar, with focus primarily on American and European tourists. Dkt. 14 ¶ 7. Since at least October 2015, NTC has continuously used and promoted the VISIT QATAR mark in the United States. *Id.* ¶ 8.

In January 2016, Plaintiff purchased the domain name visitqatar.com from a third party, *id.* ¶ 20; Dkt. 1 ¶ 10, who had originally registered the domain name in 2004 but did not use it. Dkt. 53 at 1; Dkt. 41, Ex. 4. At the time of Plaintiff's acquisition of the domain name, Plaintiff re-registered the domain name with the domain name registrar. Dkt. 1 ¶¶ 10–11, 17. In June 2019, after making essentially no use of the domain name, Plaintiff contacted NTC and offered to sell the domain name to NTC for 400,000 €. Dkt. 14 ¶ 28.

NTC then filed a complaint with the World Intellectual Property Organization ("WIPO"), alleging that Plaintiff's registration of the domain name constituted cybersquatting, and requesting an order transferring the domain name to NTC. Dkt. 1 ¶ 18.; Dkt. 14 ¶ 34. At the conclusion of

those proceedings, WIPO found that the domain name had been registered and used in bad faith and ordered the transfer of the visitqatar.com domain name to NTC. Dkt. 1 ¶ 23; Dkt. 14 ¶¶ 35–37. Plaintiff then filed the present action to prevent implementation of WIPO's decision. Dkt. 1 ¶¶ 24, 33. In his First Cause of Action, Plaintiff requested a declaratory judgment that he has not engaged in cybersquatting, thus effectively seeking to overturn WIPO's decision. *Id.* ¶¶ 27–36. NTC filed a counterclaim for cybersquatting, seeking the same relief WIPO had granted, transfer of the visitqatar.com domain name. Dkt. 14 ¶¶ 51–54. The parties have also filed additional claims and counterclaims, as discussed below.

## A. This Court's Summary Judgment Decision On The Cybersquatting Claim And Counterclaim

On August 4, 2020, Plaintiff moved for summary judgment that he had not engaged in cybersquatting. Dkt. 38. Under the anticybersquatting statute, a party may not register a domain name that is confusingly similar to "a mark that is distinctive at the time of registration of the domain name." 15 U.S.C. § 1125(d)(1)(A)(ii)(I). Plaintiff's motion presented a single question of law – whether "the time of registration" refers to the time that Plaintiff registered the domain name in 2016, or the time that the third-party assignor originally registered the domain name in 2004. Dkt. 38 at 2. Plaintiff argued that "the time of registration" refers to the original registration in 2004. *Id.* Thus, Plaintiff argued, this original registration did not occur at a time when the VISIT QATAR mark was distinctive and associated with NTC. *Id.*

This Court issued its ruling on April 1, 2021. Dkt. 53. The Court observed that the issue of law presented by Plaintiff's motion "appears to be an open question in the Tenth Circuit, and some circuits have split on the issue." *Id.* at 8. In particular, the Ninth Circuit adopted Plaintiff's

statutory interpretation, while the Third and Eleventh Circuits adopted NTC's interpretation. *Id.* at 11. Ultimately, this Court resolved the Circuit split in favor of Plaintiff. *Id.* at 11–15. This Court then concluded that NTC developed its mark after the original 2004 registration of the visitqatar.com domain name by a third party. *Id.* at 15. Accordingly, this Court held that the domain name was registered at a time before NTC's mark had become distinctive and thus Plaintiff was not liable for cybersquatting. *Id.* at 15–16.

**B. <u>The Remaining Claims And Counterclaims Before This Court</u>**

Plaintiff's Complaint asserts two additional claims against NTC. Neither claim relates in any way to this Court's statutory interpretation of the term "time of registration" in the anti-cybersquatting statute.

First, Plaintiff alleges that NTC has engaged in "reverse domain name hijacking" in violation of 15 U.S.C. § 1114(2)(D)(iv)–(v). Dkt. 1 ¶¶ 37–42. Under that statute, when a domain name registrar transfers or suspends a registration "based on a knowing and material misrepresentation by any other person" that the domain name is confusingly similar to an existing trademark, the party making the misrepresentation may be liable for damages and other remedies. 15 U.S.C. § 1114(2)(D)(iv). Plaintiff alleges in his Complaint that NTC filed its WIPO complaint "[k]nowing its allegations were not 'complete and accurate.'" Dkt. 1 ¶ 39. Thus, the main issues raised by this cause of action are (i) whether any domain name registrar ever transferred or suspended Plaintiff's visitqatar.com domain name, and (ii) if so, whether this action was taken based upon knowingly false or inaccurate statements made by NTC.

These issues plainly have nothing to do with the claims already resolved by this Court. Whether a domain name registrar ever suspended or transferred from Plaintiff the visitqatar.com

domain name has nothing to do with the meaning of "time of registration" in the separate anti-cybersquatting statute.[2] Similarly, whether NTC made knowingly false statements to WIPO has nothing to do with the meaning of "time of registration."

Second, Plaintiff has alleged tortious interference with his contract with the domain name registrar, Name.com. Dkt. 1 ¶¶ 43–47. This claim, too, is based upon the allegation that NTC knowingly made representations to WIPO that were not complete and accurate. *Id.* ¶ 46. Thus, again, this claim has nothing to do with the meaning of "time of registration" in the anti-cybersquatting statute.

In addition, NTC has asserted a counterclaim for infringement of its VISIT QATAR mark, as well as a counterclaim for cancellation of Plaintiff's trademark registration for the same mark. Dkt. 14 ¶¶ 38–50, 55–65. Again, neither claim has anything to do with the legal issue resolved by this Court on summary judgment.

To prove trademark infringement, NTC first must prove that it is the senior user of the VISIT QATAR mark in the United States. That is, NTC must show that consumers associated the VISIT QATAR mark with NTC in the United States before Plaintiff began using the same mark in the United States. J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 16:34 (5th ed.) ("*McCarthy*"). *See also* Dkt. 14 ¶ 41 (alleging this element). This showing, once again, has nothing to do with the meaning of "time of registration" in the anticybersquatting statute. The date of registration of a domain name is simply irrelevant to determining seniority for a trademark

---

[2] NTC notes that Plaintiff has never even alleged that any domain name registrar actually transferred or suspended the visitqatar.com domain name. To the contrary, Plaintiff filed this action successfully to stop any such transfer. Thus, Plaintiff's factual basis for this claim is unclear.

infringement claim, which is determined by priority of use of a mark in commerce. *Brookfield Commc'ns, Inc. v. W. Coast Entm't. Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) (registration of a domain name "does not itself constitute 'use' for purposes of acquiring trademark priority"); *Toytrackerz LLC v. Koehler*, No. CIV.A. 08-2297-GLR, 2009 WL 2591329 at *4 (D. Kan. Aug. 21, 2009) ("Rights to a trademark are acquired by use and not by registration."); *McCarthy* § 25A:41.

In support of its trademark infringement claim, NTC also must prove likelihood of confusion between the parties' respective VISIT QATAR marks under the following six factors:

> (a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) evidence of actual confusion; (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (e) the degree of care likely to be exercised by purchasers; and (f) the strength or weakness of the marks.

*King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999). As with all other issues, likelihood of confusion will be decided completely independently of the meaning of "time of registration" in the anti-cybersquatting statute.

Finally, NTC has asserted a counterclaim for cancellation of Plaintiff's trademark registration for VISIT QATAR. Dkt. 14 ¶¶ 55–65. This counterclaim is based upon NTC's allegation that Plaintiff knowingly submitted false information to the Patent & Trademark Office ("PTO") in order to obtain his trademark registration. *Id.* ¶¶ 58–60. As before, this counterclaim is entirely independent of this Court's statutory interpretation of "time of registration" in the anti-cybersquatting statute.

## II. THIS COURT SHOULD ENTER JUDGMENT UNDER RULE 54(b) ON THE PARTIES' CYBERSQUATTING CLAIMS

Rule 54(b) of the Federal Rules of Civil Procedure provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). "The purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." *Atwell v. Gabow*, No. 06-cv-02262-CMA-MJW, 2009 WL 112492 at *3 (D. Colo. Jan. 15, 2009).

In deciding whether to enter judgment under Rule 54(b), "[a] district court must first determine that it is dealing with a 'final judgment.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id*. (internal quotations omitted). "Once having found finality, the district court must go on to determine whether there is any just reason for delay." *Id*. at 8. "It is left to the sound judicial discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal." *Id*. The Court may properly "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id*. *See also McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988).

**A. This Court's Summary Judgment Order Constitutes The Final Disposition Of Claims**

There is no doubt that this Court's summary judgment order is a "final judgment" within the meaning of the Supreme Court's *Curtiss-Wright* decision. The decision granted Plaintiff all the relief he was seeking in his First Cause of Action – a declaration that he did not engage in cybersquatting when he purchased or registered the visitqatar.com domain name. The decision also denied NTC all the relief it was seeking in its Second Counterclaim – a judgment that Plaintiff engaged in cybersquatting when he registered the domain name. The summary judgment ruling is, therefore, "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright*, 446 U.S. at 7. Accordingly, the first part of the *Curtiss-Wright* test is satisfied.

**B. There Is No Just Reason To Delay Entry Of Judgment**

The Supreme Court in *Curtiss-Wright* identified two factors for the district courts to consider in determining whether there is any just reason to delay entry of judgment. The first is whether "the claims under review were separable from the others remaining to be adjudicated." *Curtiss-Wright*, 446 U.S. at 8.

That is clearly the case here. As discussed above, there is simply no overlap between the question of law this Court decided on summary judgment and the remaining claims and counterclaims. This Court's summary judgment ruling was based entirely upon its interpretation of "time of registration" in the anti-cybersquatting statute, 15 U.S.C. § 1125(d). This Court held that the statutory term "time of registration" referred to the original registration of a domain name, and not any subsequent registration upon the transfer of the domain name to a purchaser. Dkt. 53 at 10–15. In contrast, Plaintiff's two remaining claims are based entirely upon his allegation that

NTC knowingly made false and incomplete statements in its WIPO complaint. Dkt. 1 ¶¶ 39, 46. And NTC's remaining claims for trademark infringement and cancellation of Plaintiff's trademark registration similarly have no relationship to the proper statutory interpretation of "time of registration" in the anti-cybersquatting statute.

The Supreme Court also held that district courts may properly consider whether the Court of Appeals will be required to decide the same issue twice. *Curtiss-Wright*, 446 U.S. at 8. For the reasons just discussed, that will not occur here. In the appeal NTC now seeks to file, the Court of Appeals will address only a single issue of statutory interpretation – the meaning of the term "time of registration" in the anti-cybersquatting statute. As just discussed, that issue is not relevant in any way to the remaining claims to be decided by this Court. Thus, if those remaining claims are ever appealed, the Court of Appeals will address entirely different issues than in the appeal NTC now seeks to file.

Finally, the Court of Appeals has described the Rule 54(b) determination as "a balancing test, weighing 'Rule 54(b)'s policy of preventing piecemeal appeals against the hardship or injustice that might be inflicted on a litigant because of the delay.'" *McKibben*, 840 F.2d at 1528 (quoting *United Bank of Pueblo v. Hartford Acc. & Indem. Co.*, 529 F.2d 490, 492 (10th Cir. 1976)). Here, as just discussed, entry of judgment under Rule 54(b) will not create piecemeal appeals in any meaningful sense because the Court of Appeals will not be deciding the same issue twice.

On the other side of the scale, denying entry of judgment will cause hardship to NTC from the delay. NTC has been attempting to recover what it regards as its domain name since July 2019, when it initiated the WIPO proceeding. Dkt. 14 ¶ 34. If NTC is denied the ability to appeal

promptly, NTC will be forced to wait until the end of trial of the remaining claims before it can appeal. No trial date has yet been set, and with the backlog of cases caused by the COVID pandemic, there may be a very substantial delay before trial occurs.

While awaiting trial, NTC is likely to suffer irreparable harm from Plaintiff's continued operation of the visitqatar.com website. Plaintiff's use of the visitqatar.com domain name is likely to cause consumers to mistakenly believe that his website has been authorized, sponsored, licensed, approved, or endorsed by NTC, or that Plaintiff is somehow affiliated with NTC. *See* Dkt. 14 ¶ 43. This false association between Plaintiff and NTC will cause irreparable harm to NTC's reputation and goodwill.

The likelihood of serious irreparable harm to NTC is particularly strong on the unique facts of this case. Plaintiff's visitqatar.com website purports to be a website promoting travel to Qatar, purportedly offering consumers flights and hotels. Armstrong Decl. ¶¶ 3–5. And Plaintiff's website provides an email address (info@visitqatar.com) for consumers to ask questions about travel to Qatar. *Id.* ¶ 6. But when visitors to the website contact that email address, they receive no response. *Id.* ¶ 7–9. Indeed, NTC has retained an independent investigator to attempt to contact someone through Plaintiff's website at the info@visitqatar.com email address, and all of his repeated efforts have failed. *Id.* Thus, if consumers believe Plaintiff's website is operated by NTC, their disappointment and frustration in receiving no response will be directed to NTC, harming NTC's reputation in its mark. The amount of business NTC has lost and is continuing to lose from consumers who attempted unsuccessfully to contact NTC through Plaintiff's website is incalculable.

The likelihood of serious irreparable harm to NTC is further exacerbated by NTC's impending plans to launch a sizeable marketing campaign following the lifting of the COVID-19 travel restrictions in Qatar. Trenkel Decl. ¶ 4–5. NTC intends to blanket all platforms—social media, online and print publications, television, and radio—with information about tourism in Qatar, prominently featuring NTC's VISIT QATAR mark, and directing consumers to its website, visitqatar.qa. *Id.* NTC expects a significant increase in web traffic, which will inevitably and erroneously lead consumers to Plaintiff's website at visitqatar.com, causing further consumer disappointment and harm to NTC's mark.

Moreover, NTC is also likely to suffer damages from being deprived of the ability to use the visitqatar.com domain name itself. NTC expects that this domain name will reach and attract far more American tourists than its current domain name, visitqatar.qa. And NTC's very reason for existing is to attract those tourists to Qatar. No just reason exists to delay NTC's effort to convince the Court of Appeals that it is entitled to recover the visitqatar.com domain name, and to begin reaping its benefits.

## III. CONCLUSION

This Court's summary judgment order resolved a single question of statutory construction that has divided the Circuit Courts. That question of law is entirely separate from the remaining claims and counterclaims in this case, and there is no just reason to delay appellate review of a question of law of first impression in this Circuit. Accordingly, NTC respectfully requests that this Court enter final judgment under Rule 54(b) on Plaintiff's First Cause of Action and NTC's Second Counterclaim.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 21, 2021

By: */s/ Baraa Kahf*

Lynda J. Zadra-Symes (SBN 156,511)
Baraa Kahf (SBN 261,144)
Ryan Walkenhorst (McBride) (SBN 297,557)
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502
lynda.zadrasymes@knobbe.com
baraa.kahf@knobbe.com
ryan.mcbride@knobbe.com

POLSINELLI PC

John R. Posthumus
Polsinelli PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Phone: (303) 572-9300
Fax: (303) 572-7883
jposthumus@polsinelli.com

Attorneys for Defendant and Counterclaimants
NATIONAL TOURISM COUNCIL
f/k/a QATAR TOURISM AUTHORITY, and
QATAR AIRWAYS GROUP Q.C.S.C.

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Baraa Kahf*
Baraa Kahf

**CERTIFICATE OF SERVICE**

I hereby certify on April 21, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

*Counsel for Plaintiff:*

James Juo
Thomas P. Howard
**THOMAS P. HOWARD, LLC**
842 W South Boulder Rd.,
#100 Louisville, CO 80027
303-665-9845
303-665-9847 (fax)
jjuo@thowardlaw.com
thoward@thowardlaw.com

*/s/ Baraa Kahf*
Baraa Kahf