IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03353-DDD-NRN

Teymur Mehdiyev
    Plaintiff/Counter-defendant

v.

Qatar National Tourism Council
a/k/a Qatar Tourism Authority,
a Government Authority of Qatar,

    Defendant/Counterclaimant.

---

## RESPONSE IN OPPOSITION TO DEFENDANT NTC'S RULE 54(b) MOTION

---

Plaintiff Teymur Mehdiyev hereby opposes the Rule 54(b) Motion filed by Defendant Qatar National Tourism Council ("NTC") for entry of a final judgment of no cybersquatting that may then be appealed. In particular, Mr. Mehdiyev opposes a Rule 54(b) judgment without a stay pending appeal.

### I.    INTRODUCTION

This is a David-and-Goliath story of an individual who prevailed over one of the richest countries in the world when the Court granted Mr. Mehdiyev's motion for partial summary judgment of no cybersquatting with respect to the *<visitqatar.com>* domain name.

Now Defendant NTC is seeking certification under Rule 54(b) of that partial summary judgment in order to take a piecemeal appeal, while still also pursuing related and overlapping claims against Mr. Mehdiyev to trial.

1

But the cybersquatting claim is a threshold matter with respect to at least Mr. Mehdiyev's reverse domain name hijacking claim that remains unresolved in this action. An element of his hijacking claim is that the registration of the domain name was not unlawful—which the summary judgment of no cybersquatting has now established.

Even if the Court decides that Mr. Mehdiyev's reverse domain name hijacking claim is distinct and separable; then separately litigating such intertwined claims, as well as the overlapping facts and legal issues of NTC's unresolved common law trademark claim, would impose significant undue hardship on Mr. Mehdiyev. This hardship could be alleviated, however, if the Court were to grant a stay of the present action pending appeal of a final judgment under Rule 54(b). The balance of the equities weighs against certification under Rule 54(b) unless there is a stay pending appeal.

## II.     BACKGROUND

### A.     The Parties and the Domain Name

Mr. Mehdiyev is an individual of modest means who resides in Azerbaijan. [ECF 1]. As part of a side-venture related to the travel industry, he has acquired travel-related domain names including the <*visitqatar.com*> domain name that was the subject of a Uniform Domain-Name Dispute-Resolution Policy ("UDRP") initiated by NTC in 2019. Mehdiyev Decl. at ¶ 3. The present action challenging that UDRP proceeding stayed the transfer of the domain name—which is still the *status quo* even after the grant of summary judgment of no cybersquatting.

NTC is a government authority for the country of Qatar, "the world's second largest exporter of liquefied natural gas" with "one of the highest per capita incomes in the world." Exh. A. For all of Qatar's wealth, however, NTC has never possessed the <*visitqatar.com*> domain name.

And NTC's attempt to force a transfer of that domain name using the UDRP is stayed while this action remains pending—which, again, is the *status quo* of this case.

### B.  The Partial Summary Judgment

Mr. Mehdiyev filed a motion for partial summary judgment because NTC could not establish having an allegedly distinctive trademark that predated the time of registration of the *<visitqatar.com>* domain name. A third party registered the *<visitqatar.com>* domain name in June 2004, NTC allegedly started using "Visit Qatar" as a distinctive trademark in October 2015, and Mr. Mehdiyev acquired the *<visitqatar.com>* domain name in January 2016.

On April 1, 2021, the Court granted summary judgment that "Mr. Mehdiyev's acquisition of the *<visitqatar.com>* domain name does not constitute cybersquatting for purposes of 15 U.S.C. § 1125(d) in relation to the Council's 'Visit Qatar' or 'VisitQatar' trademarks." [ECF 53 at 16]. This is the ruling for which NTC is seeking a final judgment under Rule 54(b).

### C.  The Remaining Claims and Counterclaims

Mr. Mehdiyev has two claims and NTC has two counterclaims remaining in the present action.

#### 1.  Mr. Mehdiyev's Reverse Domain Name Hijacking Claim

Mr. Mehdiyev's reverse domain name hijacking claim, which also is the basis for statutory damages of up to $100,000 (*see* [ECF 1] at 8), has two elements. *See Domain Vault LLC v. Bush*, No. 14-CV-2621-WJM-CBS, 2015 WL 1598099, at *9 (D. Colo. Apr. 8, 2015) (citing 15 U.S.C. § 1114(2)(D)(iv)–(v)).

First, whether the registration of the domain name was unlawful or not. *Domain Vault*, 2015 WL 1598099, at *10 (citing 15 U.S.C. § 1114(2)(D)(v)). That the registration of the

3

<*visitqatar.com*> domain name was not unlawful is established by the Court's summary judgment of no cybersquatting. [ECF 53].

Second, whether NTC knowingly made material misrepresentations in its UDRP complaint. *Domain Vault*, 2015 WL 1598099, at *9 (citing 15 U.S.C. § 1114(2)(D)(iv)). Here, NTC alleged in its UDRP complaint (Exh. D) that NTC had been using "Visit Qatar" as a distinctive mark since 2012—but NTC's Counterclaim ([ECF 14] at 21) for cybersquatting filed in this action, and subject to Rule 11, instead alleges that its use of the mark only began years later in October 2015.

### 2. Mr. Mehdiyev's Tortious Interference Claim

Mr. Mehdiyev's tortious interference claim depends on his related reverse domain name hijacking claim as the "wrongful means" to show improper interference. *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1198–99 (Colo. App. 2009) (discussing interference with contract through wrongful tortious conduct); *see also Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) (discussing "wrongful means"); *accord DP-Tek, Inc. v. AT&T Global Info. Solutions Co.*, 100 F.3d 828, 833-35 (10th Cir. 1996) (interpreting "wrongful means" to require "independently actionable conduct" under Kansas law).

### 3. NTC's Common Law Trademark Counterclaim

NTC first counterclaim alleges common law trademark for the words "Visit Qatar." NTC's counterclaim is based on 15 U.S.C. § 1125(a), often also is referred to as Section 43(a) of the Lanham Act, which protects marks has not been federally registered. *See, e.g.*, *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 522 (4th Cir. 2002). The protection accorded such common law marks "is directly related to the mark's distinctiveness" as used in commerce. *Id.* at 523. Here,

NTC alleged "common law trademark rights in the VISIT QATAR mark in the United States as early as October 2015" in support of cybersquatting. [ECF 14] at 21 (NTC Counterclaim ¶ 53).

### 4. NTC's Trademark Cancellation Counterclaim

NTC's other remaining counterclaim seeks cancellation of Mr. Mehdiyev's U.S. Trademark Registration No. 5,517,993 for his VISIT QATAR mark covering travel-related services. NTC alleges that Mr. Mehdiyev fraudulently declared that he provided booking services because his "Visit Qatar" website used third-party technology to provide those services. [ECF 14] at 22–24. To avoid ensnaring honest mistakes in trademark applications, NTC must prove that the registrant actually knew the statement was false when submitted to the Trademark Office, with the intent to deceive. *See In re Bose Corp.*, 580 F.3d 1240, 1245–46 (Fed. Cir. 2009).

## III.  LEGAL STANDARDS

### A.  Rule 54(b)

A certification under Rule 54(b) to enter a final judgment of fewer than all of the claims in an action requires that the Court "make two express determinations." *Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001). Namely, (1) the judgment is **final** such that "the claims resolved are distinct and separable from the claims left unresolved;" and (2) there is no **just reason** to delay entry of judgment. *Id.* (discussing "claims that are so intertwined (have so much factual overlap) as to be inseparable"); *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) ("Certification under Rule 54(b) is a two-step process.").

First, with respect to the finality of an adjudicated claim, "[w]hile the exact definition of 'claim' for purposes of Rule 54(b) is unsettled, . . . a 'claim' is generally understood to include all factually or legally connected elements of a case." *Okla. Turnpike*, 259 F.3d at 1242 (citations

omitted). Claims that can be decided independently of each other, are distinct under Rule 54(b). *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S. Ct. 895, 100 L.Ed. 1297 (1956)); *see also Attias v. CareFirst, Inc*., 969 F.3d 412, 417 (D.C. Cir. 2020) (discussing claim preclusion in connection with Rule 54(b)). Whether a claim is **distinct and separable** from the claims left unresolved is a question of law. *Id*. at 1242–43 (finding the judgment "only partially disposed of a class of claims that . . . should instead be disposed of together")

Second, the Court must consider the **balance of equities** to determine whether there is no just reason to delay appellate review. *Fireman's Fund Ins. Co. v. Steele St. Ltd. II*, No. 17-CV-01005-PAB-SKC, 2019 WL 3778304, at *2 (D. Colo. Aug. 12, 2019) (finding that the movant "has failed to show that the balance of equities favors certification"). This includes the federal policy against piecemeal appeals. *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005); *Rockhill Ins. Co. v. CFI-global Fisheries Mgmt*., No. 16-CV-02760-RM, 2021 WL 253458, at *2 (D. Colo. Jan. 26, 2021). The sound discretion of the district court "must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8, 100 S. Ct. 1460, 64 L.Ed.2d 1 (1980).

The Tenth Circuit has cautioned that "Rule 54(b) entries are not to be made routinely." *Okla. Turnpike*, 259 F.3d at 1242; *Gas-A-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir. 1973).

### B.  Stay Pending Appeal

A stay of the litigation over the remaining claims pending appeal often is granted in conjunction with a Rule 54(b) certification. *See Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist*. 60, No. 09-CV-00858-WJM-MEH, 2011 WL 1882829, at *4 (D. Colo. May 17, 2011) ("Since the

6

Court is granting Plaintiff's motion for Rule 54(b) certification, the Court finds that it is in the interest of justice to stay all trial court proceedings pending a decision by the Court of Appeals"); *see also Jordan v. Pugh*, 425 F.3d 820, 824 (10th Cir. 2005) (noting the district court had stayed the remaining claims pending appeal). For a stay pending appeal, courts traditionally consider four factors: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L.Ed.2d 724 (1987) (noting Fed. R. Civ. P. 62(c) and Fed. R. App. P. 8(a) consider generally the same factors).

## IV. DISCUSSION

The legal inquiry of whether the adjudicated cybersquatting claim is "distinct and separable" from the remaining unresolved claims will be addressed first, and the equitable "no just reason to delay" inquiry will be addressed next together with the issue of a stay pending appeal.

### A. Legal Inquiry: The Adjudicated Cybersquatting Claim Is Not "Distinct and Separable" From the Unresolved Reverse Domain Name Hijacking Claim

The controlling legal question here is whether the adjudicated cybersquatting claim is "distinct and separable" from the other claims, such as Mr. Mehdiyev's reverse domain name hijacking claim, left unresolved. To determine whether a claim is "distinct and separable," courts consider whether the claims turn on the same factual questions, whether they involve common legal issues, and whether separate recovery is possible. *Okla. Turnpike*, 259 F.3d at 1242 (citing Moore's Federal Practice 3d 202.06[2]); *see also Sears, Roebuck & Co.,* 351 U.S. at 436 (considering whether the claims can be decided independently of each other).

7

NTC, however, simply asserted that the cybersquatting claim was separate from the remaining unresolved claims based on the "counts" set forth in the pleadings, but the organization of the pleadings does not control the Rule 54(b) inquiry. *Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 44 n.6 (1st Cir. 1988) ("The mere happenstance that a plaintiff chooses, as here, to organize her complaint into separate 'counts' or 'statements of claim' can make no real difference."). While NTC's claim "count" approach would be easy to apply, it does not properly consider the substance of the claims at issue.

With respect to the cybersquatting claim itself, NTC focused on "the time of registration" language in the statute, which is only one of the elements for cybersquatting. NTC ignored how the adjudication of cybersquatting affected the remaining claims in the present action.

Here, Mr. Mehdiyev's reverse domain name hijacking claim builds on the adjudicated cybersquatting claim. Reverse domain name hijacking is the abusive use of trademark rights to "strip domain names from rightful owners" by accusing them of cybersquatting even though the registration of the domain name was not unlawful. *Domain Vault*, 2015 WL 1598099, at *1. And the summary judgment of no cybersquatting establishes that the registration and Mr. Mehdiyev's acquisition of the <visitqatar.com> domain name was not unlawful. [ECF 53]. Now Mr. Mehdiyev only has to prove that NTC knowingly made material misrepresentations in its UDRP complaint asserting cybersquatting agaisnt the <visitqatar.com> domain name. *See Domain Vault*, 2015 WL 1598099, at *9 (citing 15 U.S.C. § 1114(2)(D)(iv)). Cybersquatting is a threshold issue with a direct effect on reverse domain name hijacking, and these claims are not distinct and separable. *See Okla. Turnpike*, 259 F.3d at 1242–43; *Sears, Roebuck & Co.,* 351 U.S. at 436.

Mr. Mehdiyev's tortious interference claim likewise builds on reverse domain name hijacking as the "wrongful means" to support that claim. *See Harris Grp.*, 209 P.3d at 1198–99.

With respect to NTC's counterclaims, while Mr. Mehdiyev concedes that those counterclaims are distinct and separable from the cybersquatting claims, they nonetheless have facts and legal issues that overlap with cybersquatting which must be considered in balancing the equities in the next part of the analysis.

### B. Equitable Inquiry: Without a Stay Pending Appeal, the Balance of the Equities Does Not Favor Certification Under Rule 54(b)

Should the Court decide that Mr. Mehdiyev's unresolved claims do not preclude certification under Rule 54(b) as a matter of law, they must still be considered further in balancing the equities in the second part of the analysis, along with NTC's failure to show any prejudice that could justify the early piecemeal appeal that it now seeks. Without a stay pending appeal, the balance of the equities does not favor certification under Rule 54(b).

#### 1. Intertwined Claims and Overlapping Facts

As previously discussed, Mr. Mehdiyev's tortious interference claim builds on his reverse domain name hijacking claim, which in turn builds on the summary judgment of no cybersquatting. There should not be a piecemeal appeal of these intertwined claims, unless there is a stay of the present action pending appeal.

In addition, NTC's counterclaims also involve overlapping facts that would need further adjudication if the summary judgment is vacated on appeal. For example, NTC's own pleadings alleged "common law trademark rights in the VISIT QATAR mark in the United States" in support of its cybersquatting claim. [ECF 14] at 21 (NTC Counterclaim ¶ 53). Indeed, factual and legal issues regarding when NTC's alleged trademark became distinctive for its services overlap for

9

both cybersquatting and common law trademark infringement.[1] For example, NTC would still have to prove that its use of the "#visitqatar" hashtag acquired distinctiveness as a trademark for services provided in interstate commerce. *See, e.g.*, [ECF 14] at 10–11. But use of a hashtag on social media does not establish trademark rights. *See Eksouzian v. Albanese*, No. CV 13-00728-PSG-MAN, 2015 WL 4220478 (C.D. Cal. Aug. 7, 2015) ("hashtags are descriptive devices, not trademarks"); *see also In re i.am.symbolic, llc*, 127 U.S.P.Q.2d 1627, 1633 (TTAB 2018) ("the use of a hashtag in the social media context plays a functional role in facilitating searches").

NTC's cancellation counterclaim for fraud on the Trademark Office also is related to the cybersquatting claim because if the summary judgment is vacated on appeal, then Mr. Mehdiyev expects NTC will attempt to rely on the same facts as its cancellation counterclaim alleging fraud on the Trademark Office to establish "bad faith" by Mr. Mehdiyev with respect to the *<visitqatar.com>* domain name for cybersquatting under the ACPA, 15 U.S.C. § 1125(d)(1)(A).

Again, absent a stay, there should not be a piecemeal appeal of these related claims and counterclaims.

### 2. No Prejudice to NTC in the Status Quo of the *<visitqatar.com>* Domain Name

NTC has never possessed the *<visitqatar.com>* domain name. Not when NTC initiated the UDRP proceeding against Mr. Mehdiyev. Nor when Mr. Mehdiyev filed the present action which stayed the transfer of the *<visitqatar.com>* domain name under the UDRP. *See, e.g.*,

---

[1] NTC has yet to prove up that it has a protectable trademark. The summary judgment was based on the fact that NTC alleged no use of the mark before October 2015. Whether NTC actually has any trademark rights in the words "Visit Qatar" (and, if so, when) is still in dispute.

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 626–27 (4th Cir. 2003) ("transfer was certain to occur absent the filing of this action to stop it").

Nonetheless, NTC argues it is "being deprived" from using the <*visitqatar.com*> domain name ([ECF 56] at 11), even though that is the *status quo* of this case, as it has been from the beginning. NTC also argues it risks "irreparable harm" in view of "NTC's impending plans to launch a sizeable marketing campaign" this year ([ECF 56] at 11), but NTC made those plans under the existing *status quo*, so any harm from that continued *status quo* is simply self-inflicted. *See Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002) (discounting "self-inflicted" injury to party when balancing harms for equitable relief).

NTC has shown no real hardship or prejudice beyond its frustration at not owning the <*visitqatar.com*> domain name. The partial summary judgment of no cybersquatting may have poured salt on the wound of NTC's inability to strip that domain name away from Mr. Mehdiyev, but it otherwise has not affected the existing *status quo* of this case.

### 3. NTC Hypocritically Relies on Trademark Issues to Show Hardship If the Cybersquatting Claims Are Not Appealed

Guilefully shifting the focus from the <*visitqatar.com*> **domain name** to the visitqatar.com **website**, NTC's motion argues that "NTC is likely to suffer irreparable harm from Plaintiff's continued operation of the visitqatar.com website" if NTC is not allowed to immediately appeal the summary judgment of no cybersquatting. [ECF 56] at 10. But the website is what NTC accuses of infringement in its **trademark** claim.

The domain name and the website are different things. Indeed, one could move all of the website content from the <*visitqatar.com*> domain to an entirely different domain, and NTC could

11

still make the same "irreparable harm" argument for trademark infringement against the website now moved onto that other domain.[2]

It is hypocritical for NTC to argue that its common law trademark infringement counterclaim "will be decided completely independently" of cybersquatting ([ECF 56] at 6)—and then rely on facts relating to that same trademark counterclaim against the website to argue that it would suffer hardship from a delay in appealing the cybersquatting claim against the domain name ([ECF 56] at 10). Either way, NTC has undercut its own arguments on the balance of the equities.

### 4. Hardship on Mr. Mehdiyev

Absent a stay pending appeal, having to litigate intertwined claims separately in an appeal to the Tenth Circuit, as well as a trial at the District Court, would be an inequitable hardship on Mr. Mehdiyev, especially in view of the economic disparity between an Azerbaijani individual against NTC, a government authority of Qatar—a country with a $295,200,000,000.00 sovereign wealth fund. Exh. B. On the other hand, the total revenue generated by the website at the <*visitqatar.com*> domain is only about twelve dollars ($12), which Mr. Mehdiyev disclosed to NTC months ago. Mehdiyev Decl. at ¶3–¶4. NTC's strategy of burying Mr. Mehdiyev with litigation over a $12 website is not proportionate to any rational assessment of this case. Such hardship, however, could be alleviated if the Court were to grant a stay pending appeal. Without such a stay, there is just reason for denying entry of a judgment under Rule 54(b).

---

[2] Moreover, if NTC really believed it would suffer "irreparable harm," then NTC could have filed a motion for a preliminary injunction on its trademark infringement claim (assuming NTC could show a likelihood of success on the merits), but hasn't.

### C. <u>Stay</u> Pending Appeal Promotes Equity

A stay pending appeal often is granted in conjunction with a Rule 54(b) certification in the interest of justice. *E.g.*, *Ebonie*, 2011 WL 1882829, at *4. Again, the balance of the equities weighs against certification under Rule 54(b) unless there is a stay pending appeal.

The four traditional factors, namely, the likelihood of success on appeal; irreparable injury absent a stay; whether a stay will substantially injure the other party; and the public interest, also favor a stay pending appeal.

For the first factor, although the Court's well-reasoned decision on summary judgment is likely to be affirmed on appeal, there is no need to doubt the correctness of the decision in order to grant a stay pending appeal. *Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980). The likelihood-of-success standard for a stay pending appeal can be met for a case presenting a question of "first impression" notwithstanding a "strong belief as to the correctness" of the decision being appealed. *Id.* at 175. Here, it is undisputed that the Court's summary judgment resolved a legal question of first impression within the Tenth Circuit.

Second, as already discussed above, having to simultaneously litigate intertwined claims in an appeal and at trial over a $12 website would be an inequitable hardship for Mr. Mehdiyev, especially in view of the economic disparity between the parties and NTC's disproportionate litigation strategy against Mr. Mehdiyev to deplete his resources. *See In re Wolf Fin. Grp., Inc.*, No. 94-8884A, 1994 WL 913278, at *3 (Bankr. S.D.N.Y. Dec. 15, 1994) (noting courts have found irreparable harm where the consequences of continued litigation would deplete the assets of a party). This favors a stay pending appeal.

Third, as previously discussed, NTC has not shown any real hardship and the injury that NTC hypocritically alleged in its motion was self-inflicted in view of the *status quo* of this case. *See Davis*, 302 F.3d at 1116 (discounting "self-inflicted" injury). Simply put, NTC would not be substantially injured by a stay that preserves the *status quo* pending appeal.[3]

Fourth, with respect to the public interest, it would promote judicial economy for the Tenth Circuit to confirm the interpretation of the cybersquatting statute before further litigating the overlapping facts and legal issues of the remaining intertwined claims, where the outcome of the appeal may directly affect the remaining claims at trial. *Alston v. Read*, No. CIV. 07-00266SPK-LEK, 2010 WL 1507966, at *8 (D. Haw. Apr. 13, 2010) (holding that the interests of judicial economy warrant a stay where the issues affecting some claims are relevant to, but not dispositive of, the issues affecting other claims). For example, as previously discussed, the adjudicated cybersquatting claim is a threshold issue that directly affects the reverse domain name hijacking claim. A stay pending an appeal of the summary judgment would promote equity and the public interest.

---

[3] Nonetheless, if deemed necessary by the Court for a stay pending appeal, Mr. Mehdiyev might agree for the words "Visit Qatar" to not appear on his website at the <*visitqatar.com*> domain for the duration of the stay. Mehdiyev Decl. at ¶ 8. But, to be equitable, because the words "Visit Qatar" presently do not appear on NTC's website at its <visitqatar.qa> domain (Exh. C); NTC similarly should be required to maintain this *status quo* for its website as well for the duration of the stay. This would help assure that neither party develops any new trademark advantage with respect to the words "Visit Qatar" during the stay. However, this mutual stand-down of the parties' respective websites is unnecessary because NTC would not be substantially injured by a stay pending appeal.

## V.     CONCLUSION

NTC's Rule 54(b) motion for judgment must be denied unless there is a stay of the present action pending appeal.

Dated: May 12, 2021.

*s/ James Juo*
James Juo
THOMAS P. HOWARD, LLC
842 W South Boulder Rd., #100
Louisville, CO 80027
jjuo@thowardlaw.com
303-665-9845

Counsel for Plaintiff Teymur Mehdiyev

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III-A-1.

Dated: May 12, 2021.

*s/ James Juo*
James Juo

15