IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:19-cv-03353-DDD-NRN

TEYMUR MEHDIYEV,

      Plaintiff and Counter Defendant,

v.

QATAR TOURISM, a Government Authority of Qatar,

      Defendant and Counter Claimant.

---

## ORDER DENYING DEFENDANT'S
## MOTION FOR ENTRY OF FINAL JUDGMENT

---

On April 1, 2021, the Court granted partial summary judgment in favor of Plaintiff Teymur Mehdiyev. (Doc. 53.) This Court found, as a matter of law, that Mr. Mehdiyev's acquisition of the *visitqatar.com* domain name did not constitute cybersquatting for purposes of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). (Doc. 53.) Two of Mr. Mehdiyev's claims remain before the Court: a reverse domain hijacking claim and a tortious interference claim. (Doc. 61 at 3-4.) Two counterclaims brought by Defendant Qatar Tourism also remain before the Court: a trademark infringement claim and a trademark cancellation claim. (*Id.* at 4-5.) Qatar Tourism moves for entry of a partial final judgment as to the parties' cybersquatting claims pursuant to Federal Rule of Civil Procedure 54(b). (Doc. 56.) For the following reasons, the motion is denied.

# ANALYSIS

Federal Rule of Civil Procedure 54(b) provides that:

> When an action presents more than one claim for relief—
> whether as a claim, counterclaim, crossclaim, or third-
> party claim—or when multiple parties are involved, the
> court may direct entry of a final judgment as to one or
> more, but fewer than all, claims or parties only if the court
> expressly determines that there is no reason for delay.

The purpose of Rule 54(b) "is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001) (quoting 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2654, at 33 (2d ed. 1982)). Rule 54(b) "preserves the historic federal policy against piecemeal appeals." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956). "[T]he rule attempts to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." *Okla. Tpk.*, 259 F.3d at 1241 (quoting Wright & Miller, *supra*, § 2654, at 35). Rule 54(b) judgments are the exception, not the rule. *Id.* at 1242.

Under Rule 54(b), a court must "make two express determinations": (1) that there is a final order, and (2) that there is no just reason to delay appellate review. *Id.* at 1242. "It is left to the sound discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

## I.   Final Order

An order is final when it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* at 7 (quoting *Sears*, 351 U.S. at 437). The claim must be separable from those that remain. *Id.* Courts analyze two factors to determine whether a claim is distinct and separable: "(1) the factual overlap (or lack thereof) between the claims disposed of and the remaining claims, and (2) whether the claims disposed of and the remaining claims seek separate relief." *Okla. Tpk.*, 259 F.3d at 1242 (quoting 19 James Wm. Moore et al., *Moore's Federal Practice* § 202.06[2] (3d ed. 2000)).

The parties agree that Qatar Tourism's remaining trademark counterclaims are distinct and separable from the cybersquatting claims the Court has disposed of (*see* Doc. 61 at 9), but they contest the separability of Mr. Mehdiyev's two remaining claims. The Court cannot enter partial judgment unless it finds that the cybersquatting claims disposed of are separate and distinct from the reverse domain hijacking claim and the tortious interference claim.

As relevant to this case, a person violates the cybersquatting statute if that person:

> (i) has a bad faith intent to profit from [a] mark . . . and
>
> (ii) registers, traffics in, or uses a domain name that—
>
>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark.

15 U.S.C. § 1125(d)(1)(A). The Court's analysis of the parties' competing cybersquatting claims focused on the statutory interpretation of "the time of registration," and the Court concluded that the time of registration of the *visitqatar.com* domain name was in 2004. (Doc. 53 at 8-15.)

Because Qatar Tourism concedes that the "VISIT QATAR" mark was not distinctive in 2004, the Court held that Mr. Mehdiyev's registration and use of the domain name does not constitute cybersquatting as a matter of law. (*Id.* at 16.)

Reverse domain hijacking "is the abusive use of trademark rights to strip domain names from rightful owners." *Domain Vault LLC v. Bush*, No. 14-cv-2621-WJM-CBS, 2015 WL 1598099, at *1 (D. Colo. Apr. 8, 2015). If a person or entity makes a knowing and material misrepresentation regarding its trademark rights relating to a domain name that causes a registrar to take an adverse action against a registrant's domain name, that person or entity may be liable to the registrant for any resulting damages. 15 U.S.C. § 1114(2)(D)(iv). Mr. Mehdiyev alleges that Qatar Tourism knowingly misrepresented to the World Intellectual Property Organization that it holds rights in the "VISIT QATAR" mark, which caused his registrar to "lock" the *visitqatar.com* domain and prevent him from exercising his full contractual rights to control it. (*See* Doc. 1 ¶¶ 9-26, 37-42.) A registrant whose "domain name has been suspended, disabled, or transferred" may "file a civil action to establish that the registration or use of the domain name by such registrant is *not unlawful*." 15 U.S.C. § 1114(2)(D)(v) (emphasis added).

Tortious interference occurs when a person or entity employs "wrongful means" to cause a third person to discontinue an existing contract with a competitor. *See Harris Grp. v. Robinson*, 209 P.3d 1188, 1197-98 (Colo. App. 2009). Mr. Mehdiyev alleges that Qatar Tourism's wrongful misrepresentations to the World Intellectual Property Organization caused his registrar to discontinue his domain registration agreement. (*See* Doc. 1 ¶¶ 9-26, 43-47.)

Here, Mr. Mehdiyev's reverse domain hijacking and tortious interference claims "are so intertwined as to be inseparable" from the cybersquatting claims the Court has disposed of. *Okla. Tpk.*, 259 F.3d at 1243. Whether and when Qatar Tourism established rights in the "VISIT QATAR" mark, *i.e.*, when it first used the mark in commerce and whether and when the mark acquired distinctiveness, is a factual inquiry relevant to all three claims.[1] The cybersquatting claims depended on whether the mark was distinctive at the time of registration of the *visitqatar.com* domain, and the reverse domain hijacking and tortious interference claims depend on whether Qatar Tourism's representations to the World Intellectual Property Organization regarding its rights in the "VISIT QATAR" mark were accurate or not. The reverse domain hijacking claim also depends on whether Mr. Mehdiyev's registration and use of the *visitqatar.com* domain is lawful, which directly turns not only on Qatar Tourism's rights in the "VISIT QATAR" mark but also on whether he is cybersquatting under 15 U.S.C. § 1125(d)(1)(A). Given this factual overlap between all three claims, the cybersquatting claims are not distinct and separable.

Qatar Tourism contends that the crux of the analysis of the reverse domain hijacking claim should be on whether "a domain name registrar has suspended, disabled, or transferred Mehdiyev's registration for the domain name *visitqatar.com*." (Doc. 66 at 2.) But this is only one element of the reverse domain hijacking claim, and Qatar Tourism's assertion that it is undisputed that the registrar has never taken such action against Mr. Mehdiyev's registration is belied by the fact that Qatar Tourism did not file a motion for summary judgment on this claim and by the allegations in Mr. Mehdiyev's complaint. (*See* Doc. 1 ¶ 22

---

[1]   This inquiry is also relevant to Qatar Tourism's trademark infringement counterclaim.

(alleging that registrar has locked the domain and prevented him from exercising full control over it).) And Qatar Tourism overlooks the statutory element requiring that Mr. Mehdiyev's registration of the domain was "*not unlawful.*" 15 U.S.C. § 1114(2)(D)(v).

Qatar Tourism also argues that Mr. Mehdiyev "ignores the second *Oklahoma Turnpike* factor," which analyzes whether there is overlap in the type of relief sought. (Doc. 66 at 3.) The relief sought by Mr. Mehdiyev's causes of action is different. For his cybersquatting claim, Mr. Mehdiyev sought a declaratory judgment, which defines the legal relationship between parties. He also seeks a declaratory judgment with respect to reverse domain hijacking and tortious interference. (*See* Doc. 1 at 8.) But he additionally seeks an award of costs, expenses, and attorneys' fees with respect to the reverse domain hijacking claim. (*Id.*) While the relief sought by the claims differs in part, the substantial factual overlap between the claims outweighs this difference. What is more, Mr. Mehdiyev also seeks statutory damages with respect to his cybersquatting claim (*id.*). The Court did not consider or dispose of that request in its summary judgment order, making it highly questionable whether that order can be considered an "ultimate disposition" of the cybersquatting claims.

The Court concludes that the cybersquatting cause of action and Mr. Mehdiyev's remaining claims are not so separate and distinct as to warrant entry of final judgment under Rule 54.

## II.  No Just Reason for Delay

In determining whether there is no just reason for delay, courts "consider such factors as whether the claims under review were separable from others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have

to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8. The Tenth Circuit has "characterized this determination as a balancing test, weighing 'Rule 54(b)'s policy of preventing piecemeal appeal against the hardship or injustice that might be inflected on a litigant because of the delay.'" *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (quoting *United Bank of Pueblo v. Hartford Accident & Indem. Co.*, 529 F.2d 490, 492 (10th Cir. 1976)).

As discussed above, Mr. Mehdiyev's remaining two claims are sufficiently entangled with the cybersquatting claim as to render them inseparable. The cybersquatting "time of registration" question may be determinative of the reverse domain hijacking claim. And the question of whether and when Qatar Tourism established rights in the "VISIT QATAR" mark is relevant to Mr. Mehdiyev's remaining two claims and would become relevant to the cybersquatting claim should the appellate court disagree with this Court's holding on the "time of registration" issue. Breaking the cybersquatting claim off may create the type of "piecemeal appeals" that courts should avoid. *Sears*, 351 U.S. at 438. Rule 54(b) is to be used sparingly and remains the exception, not the rule. Qatar Tourism contends that "in the appeal [it] now seeks to file, the Court of Appeals will address only a single issue of statutory interpretation—the meaning of the term 'time of registration' in the anti-cybersquatting statute." (Doc. 56 at 9.) True. But this approach is too narrow: it fails to consider how an appellate ruling on that issue will impact the remaining litigation.

While Qatar Tourism points out that it continues to suffer harm on account of consumer confusion from the domain name and difficulties in launching a marketing campaign (Doc. 66 at 5-6), these harms are outweighed by the strong judicial efficiency interests that underpin

Rule 54(b). Given the interconnected nature of the claims in this case, the use of Rule 54(b) as a shortcut is improper. The interwoven nature of the claims and judicial economy favor proceeding without fracturing the cybersquatting claim off the remaining litigation.

## CONCLUSION

Qatar Tourism's Motion for Entry of Judgment under Rule 54(b) (Doc. 56) is **DENIED**.

DATED: December 3, 2021                    BY THE COURT:

Hon. Daniel D. Domenico
United States District Judge